# United States Court of Federal Claims

No. 12-208 C
January 10, 2017

_____

**GAYLE GORDON, M.D. and**
**TERESA MAXWELL, M.D.,**

      *Plaintiffs*,

**v.**

**UNITED STATES OF AMERICA,**

      *Defendant*.

_____

## SCHEDULING ORDER

The questions following these comments address most of the court's uncertainty remaining from reviews of the Record and the parties' briefs. Counsel should focus on issues that may not have been covered sufficiently thus far. At the same time, we do not seek expansive re-argument but direct responses stated as concisely as possible.

Defendant gave raises to most male doctors before the November 2010 freeze, while two female doctors in the department were not considered for raises. Plaintiffs were not considered because administrative problems prevented their pay panels from meeting before the freeze. So far, defendant has not explained why resumes must be submitted before a pay panel can be convened.

The Agency would have been willing to raise plaintiffs appropriately, it seems, if they had met the resume requirement. It did so for Dr. Maxwell. Why did plaintiffs not make the effort to insure that their files were complete? Plaintiffs' briefs do not explain this. How was Dr. Maxwell able to qualify for her raise, albeit temporarily? Plaintiffs do not contest the need for a resume requirement or explain their own failure to follow the rules.

**QUESTIONS**

1. Defendant asserts that plaintiffs did not submit résumés in time for their pay panels to recommend their raises. The resume requirement seems trivial considering its severely adverse impact on plaintiffs' salaries over the period of this lawsuit. What is the purpose of the resume requirement? Did plaintiffs know about the requirement? Did all male doctors meet the resume requirement? If plaintiffs knew about the resume requirement, why did they not submit their resumes on time?

2. If the résumé requirement is shown to have a legitimate purpose sufficient to justify its effect on plaintiffs' salaries over a period of years, would that insulate defendant from liability under the Equal Pay Act? If the requirement does not have a valid administrative purpose, but it applies equally to all employees in the department, did it have an illegal impact on plaintiffs given the result?

3. Does it matter whether the Agency intended to discriminate against female doctors? If plaintiffs show only that they were paid less than men with the same or similar duties and responsibilities, would this be sufficient to establish a violation of the EPA? If male doctors had more experience or better credentials when hired than female doctors, does this justify unequal pay for the same or similar work for years thereafter? In other words, may defendant pay male doctors a premium relative to female doctors every year of their employment?

4. Most male emergency doctors received pay increases ahead of the December 17 pay freeze. The freeze appears to be the primary reason for the "downward trend" in plaintiffs' salaries. All doctors' salaries increased in real terms periodically during the freeze because of percentage adjustments required by COLAs, but plaintiffs' increases were calculated on lower total salaries. If plaintiffs had received pay increases in 2010, would they have retained their mid-level salary position among all doctors every year?

5. Defendant's November 2015 motion for summary judgment states that the pay freeze prohibited market increases. A June 2, 2011 guidance letter includes the following advice: "adjustments to market pay for individual physicians . . . will not be affected by the pay freeze." Managers are directed to exercise "prudence" in granting raises. If plaintiffs did not submit necessary documentation in time to avoid the freeze, could the Agency have given them market pay increases during the pay freeze to offset this problem? If the Agency could have granted plaintiffs market pay increases to make up for the freeze, why did they not?

The parties should submit written responses to these questions on or before Monday, January 23, 2017. If counsel prefer an oral argument for this purpose, they may agree to an early date and advise the court. If they recognize genuine issues of material fact among these questions, they should consider submitting joint stipulations of fact sufficient to avoid trial.

**IT IS SO ORDERED.**

s/ Robert H. Hodges, Jr.

Robert H. Hodges, Jr.
Judge